IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RONALD LUHUMUZYA KAIJAGE<br>(A-Number 095534254), | § § § | |
| Petitioner, | § § | |
| V. | § | No. 3:19-cv-294-S-BN |
| JIMMY JOHNSON, Warden, | § § § | |
| Respondent. | § § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
## <u>UNITED STATES MAGISTRATE JUDGE</u>

Petitioner Ronald Luhumuzya Kaijage, a detainee at the Prairieland Detention Center, filed a 28 U.S.C. § 2241 petition. *See* Dkt. No. 3. His action has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Karen Gren Scholer.

Kaijage twice amended his petition. *See* Dkt. Nos. 6, 7, 8, 9, 11, & 12. The government filed a response to his claims as amended. *See* Dkt. No. 14 & 15. And Kaijage filed a reply brief. *See* Dkt. No. 16.

The undersigned enters these findings of fact, conclusions of law, and recommendation that, for the reasons explained below, the Court should deny the petition.

### Applicable Background

As the government explained in its response,

> Petitioner is a native and citizen of the Democratic Republic of Congo. Petitioner was ordered deported on October 2, 2003, after having entered the country without inspection. [Dkt. No. 15 ("App.")] pp. 2, at ¶ 4; 6; 14. He appealed, and the Board of Immigration Appeals affirmed on May 10, 2005, making it the final order of removal. App. p. 5. ICE ERO (Enforcement and Removal Operations) was unable to obtain travel documents to remove Petitioner to the Democratic Republic of Congo, so Petitioner was first released on an Order of Supervision on December 23, 2009. App. p. 2, at ¶ 7.
>
> During his time on supervision, Petitioner has not assisted ERO in obtaining a passport or travel document from the Democratic Republic of Congo. App. p. 2, at ¶ 8. Petitioner was taken into ICE custody on November 6, 2018, when he reported for supervision because it was determined travel documents could be obtained. App. p. 2, at ¶ 8. On January 8, 2019, a travel document was issued for Petitioner. App. p. 3, at ¶ 9. Petitioner was originally scheduled for removal on March 14, 2019, but the date had to be rescheduled due to flight availability. App. p. 3, at ¶ 10. Petitioner is now scheduled to be removed on April 2, 2019. App. p. 3, at ¶ 11.

Dkt. No. 18 at 1-2.

Kaijage does not refute this factual background. *See generally* Dkt. No. 16. But, based on his reply brief, which Kaijage signed on April 12, 2019, *see id.* at 11, he was not removed from the United States on April 2, 2019.

**Legal Standards and Analysis**

As Kaijage's removal order was final when he filed this action in February 2019, *see* Dkt. No. 1, his detention at that time was governed by 8 U.S.C. § 1231,

> which provides that the Attorney General shall remove the alien within a period of 90 days, during which time the alien shall be detained, § 1231(a)(1)(A), (a)(2). If he is not removed within the 90-day period, he may be detained beyond that time or released subject to the terms of supervision prescribed by the Attorney General. § 1231(a)(3), (6). It is presumptively constitutional for an alien to be detained for six months after a final order of removal. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

*Agyei-Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011) (per curiam).

Although Kaijage's 90-day period expired long ago, "any challenge to his continued post removal order detention is premature" if made prior to "the presumptively reasonable six-month period set forth in *Zadvydas*." *Id.* (citing *Zadvydas*, 533 U.S. at 701, and dismissing appeal for want of jurisdiction); *see Saeku v. Johnson*, No. 1:16-cv-155-O, 2017 WL 4075058, at *3 (N.D. Tex. Sept. 14, 2017) ("In order for an alien to establish a *prima facie* claim for habeas relief under the *Zadvydas* rationale, [ ] he must first establish that he has been in post-removal order custody for more than six months at the time the habeas petition is filed." (citing *Apau v. Ashcroft*, No. 3:02-cv-2652-D, 2003 WL 21801154, at *2 (N.D. Tex. June 17, 2003))); *see also Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("This six-month period [ ] must have expired at the time [the] § 2241 petition was filed in order to state a claim under *Zadvydas*." (footnote omitted)); *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 929 n.33 (W.D. Tex. 2018) ("[E]ven if Petitioners did intend to challenge the length of their detention under *Zadvydas*, their challenge is premature because they filed suit after being detained for only three months." (citing *Akinwale*, 287 F.3d at 1051-52)).

Here, if the Court counts the period from September 8, 2009 to December 17, 2009 during which Kaijage was in ICE custody for purposes of removal (some 106 days or approximately 3.5 months), *see* App. p. 2, ¶¶ 5-7, he had been in post-removal-order detention for more than six months cumulatively when he filed this action (on February 5, 2019) after being re-detained by ICE on November 6, 2018, *see, e.g., Sied v. Nielsen*, No. 17-cv-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018)

("Several courts have held that the six-month period does not reset when the government detains an alien under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again." (collecting cases)); *see also Chen v. Holder*, Civ. No. 6:14-2530, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015) ("The government further asserts that petitioner's prior detention in Louisiana should not be counted, as *Zadvydas* does not allegedly address breaks in detention, but rather was allegedly concerned with continuous detention. This argument is disingenuous as the danger sought to be addressed by *Zadvydas* was 'indefinite detention' of aliens. Surely, under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government, as was done in this case, while technically not in violation of the presumptively reasonable jurisprudential six month removal period, in essence results in an indefinite period of detention, albeit executed in successive six month intervals.").

But, even if Kaijage's challenge to his pre-removal-order detention is not premature, on January 8, 2019 – prior to his filing this action – ICE obtained travel documents allowing Kaijage to be removed to the Democratic Republic of Congo. *See* App. p. 3, ¶ 9. Kaijage has therefore "not alleged sufficient evidence to establish 'that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Apau*, 2003 WL 21801154, at *2 (quoting *Zadvydas*, 533 U.S. at 701). And the Court should deny his Section 2241 petition. *See, e.g., Nhean v. Brott*, Civ. No. 17-28 (PAM/FLN), 2017 WL 2437268, at *2-*3 (D. Minn. May 2, 2017) (where "the presumptively reasonable six-month *Zadvydas* detention period [had] long since passed," ultimately denying the habeas petition on the same basis: "Although the

travel document itself has not been included in the record, the Court concludes that Yolanda Harrison's Declaration under the penalty of perjury that the travel document has been issued, constitutes evidence rebutting Nhean's showing there is no significant likelihood of removal in the reasonably foreseeable future." (citing *Zadvydas*, 533 U.S. at 701)), *rec. adopted*, 2017 WL 2437246 (D. Minn. June 5, 2017), *case reopened and relief granted*, 2017 WL 5054390 (D. Minn. Aug. 8, 2017) ("On July 28, 2017, an Immigration Judge granted Nhean a waiver and adjustment of status, allowing him to remain in this country legally and effectively putting an end to the long-running efforts of the Government to deport Nhean.").

## Recommendation

The Court should deny the Section 2241 petition.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 17, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE